UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TERRY KLOPFENSTEIN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 1:07CV47 CDP |
| ) | |
| P & C CREATIVE ) | |
| INVESTMENTS, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM OPINION**

This case results from a mistake in real estate deed. The plaintiffs intended to buy and the defendants intended to sell a 653 acre parcel of land located in Wayne County, Missouri. The deed conveyed at closing transferred that parcel and another parcel of 388 acres. The buyers were aware of the error at closing but the sellers were not. The buyers seek quiet title, asserting that they rightfully own the mistakenly transferred 388 acre parcel. The sellers seek reformation of the deed, asserting that the error was a mutual mistake.

I heard evidence on these claims at a one-day bench trial. Reformation is not a proper remedy, because the mistake was not mutual. Although the sellers did not seek quiet title, they are entitled to it, and under Missouri law when one party seeks quiet title, I am obligated to declare the rights of both sides. Because

the facts of this case demonstrate that the buyers are not the rightful owners of the 388 acre plot, I will quiet title to that property in the sellers.

Facts

The following facts were adduced at the bench trial held on July 28, 2008.

Defendant P & C Creative Investments[1] owned two plots of forested land in Wayne County, Missouri along County Road 216. The first of these plots is 653 acres and lies to the south and west of County Road 216. The second is 388 acres and lies to the north and east of County Road 216. P & C purchased the two plots together in 2005 with the intent to sell them at a later date. Although both properties are near the county road, they are not adjacent to one another. Nevertheless, the legal description of the properties contained in P & C's deed described the properties as one property, consisting of several "tracts." The legal description describes some of the land as being on one side of the road and some as being on the other, but it does not point out that the "tracts" make up two distinct parcels of property, separated by other land as well as by the road. One of the described "tracts" encompasses portions of both parcels.[2]

---

[1]The principals who make up P & C are Mark Pierce, his wife Tammy Pierce, James Clifford, and his wife Lulu Clifford. All of these individuals, along with the limited liability company P & C, are named as defendants in this suit.

[2]The deed describes the two plots in seven enumerated tracts. Tracts 1 and 5 belong to the 653 acre property. Tracts 3 and 7 belong to the 388 acre property. Tract 2 describes two separate pieces of land, with one part belonging to the 653 acres and the other belonging to the 388 acres. Tracts 4 and 6 are not actually tracts of land, but rather describe certain easements.

P & C entered into a contract to sell the 653 acre plot to plaintiffs Terry and Jill Klopfenstein. At the closing, however, the deed delivered to the Klopfensteins contained the legal description for both plots – thus, the two plots totaling 1041 acres were conveyed.

The Klopfensteins live in Monument, Colorado and were interested in purchasing land in Missouri. Through research on the Internet, they discovered the listing for the Wayne County property, and contacted P & C's real estate company, United Country Sellers Choice. The Klopfensteins expressed interest in several properties listed by United Country. After traveling to Missouri to visit the properties, the Klopfensteins decided to make an offer on the 653 acre plot. An agent from United Country told the Klopfensteins that the real estate agency's legal description for that property contained both the 653 acre plot and the 388 acre plot together.

The parties agree that before the closing the Klopfensteins intended to buy and P & C intended to sell only the 653 acre parcel, and this is confirmed by their negotiations over the purchase. On May 27, 2006, the Klopfensteins signed a written offer to purchase property from P & C for $400,000, with $50,000 to be paid as an earnest money deposit. This offer did not specify the number of acres or contain a legal description. P & C rejected the offer and on May 31, 2006, submitted Counter Offer Number One for $450,000. In the counter-offer, P & C

specified that the property they were offering to sell was the 653 acre plot. The Klopfensteins rejected Counter-Offer Number One and submitted Counter-Offer Number Two for $425,000. This counter-offer, like the initial offer, did not specify the acreage. Again, the counter-offer was rejected by P & C. Finally, P & C submitted Counter-Offer Number Three for $436,000, again specifying that P & C was offering to sell the 653 acres only. This offer was accepted by the Klopfensteins on June 9, 2006, and the Klopfensteins submitted their $50,000 earnest money deposit. Thus a contract for the sale of land was formed: P & C would convey 653 acres for which the Klopfensteins would pay $436,000. A closing date was set for July 21, 2006. Before the closing, P & C was to submit a disclosure statement for the property and a title commitment. Neither of these documents was submitted in advance, but they were made available to the Klopfensteins at the closing.

The closing took place at U.S. Bank in Poplar Bluff, Missouri, where the Klopfensteins financed their loan. In attendance at the closing were Terry and Jill Klopfenstein, James and Lulu Clifford, Mark and Tammy Pierce, Miranda Fickert (a loan officer with the bank), Wes Kemp, and Rebecca Barnhill (both real estate agents for United Country). The closing lasted two to three hours and was at times heated and contentious.

The arguments at the closing centered around a 13-acre parcel of property

that the Klopfensteins wrongly believed was included in the land they were buying. Witnesses gave conflicting testimony as to what happened at the closing, although all agreed that the Klopfensteins believed they should be receiving this 13 acres, which P & C did not own. Terry Klopfenstein testified that several people had told him – when he was in Missouri earlier looking at the property – that the 13 acre plot was included in the parcel he was purchasing. Others denied having said this, but not everyone who was involved in the negotiations testified at trial.[3] In any event, everyone agrees that at the closing, the P & C defendants and their real estate agent told the Klopfensteins that P & C did not own this 13 acres, could not sell it, and was not conveying it in this transaction.

According to the Klopfensteins, once they found out that the 13 acres was not part of the transaction, they were very reluctant to go through with the closing.[4] In fact, the Klopfensteins testified, they would have backed out entirely, except that real estate agent Wes Kemp threatened to keep their $50,000 earnest money deposit.[5] The other witnesses agree that the Klopfensteins appeared

---

[3]Terry and Jill Klopfenstein testified, as did defendants James Clifford, Mark Pierce, and Lulu Clifford. Banker Miranda Fickert was subpoenaed to testify as a witness for the defense. Real Estate agent Rebecca Barnhill was not called to testify. Wes Kemp died before this case was filed.

[4]Terry Klopfenstein testified that the 13 acres was important because a road through it provided the easiest access to part of the property.

[5]Defense counsel raised vigorous and repeated hearsay objections to any testimony relating to what Wes Kemp may have said. As I explained at trial, however, I am not considering any out of court statements made by Wes Kemp or anyone else for the truth of the matter

reluctant to go through with the closing after the 13-acre dispute arose, but they do not agree on what was said about the $50,000 deposit. According to the Pierces, the Cliffords, and banker Miranda Fickert, once the dispute about the 13 acres became heated, the P & C defendants offered to cancel the entire transaction and walk away. Mr. Clifford told the Klopfensteins he had another buyer for the property and would gladly sell to this other person. Mr. Pierce testified that he offered to refund the Klopfensteins' earnest money deposit, but the Klopfensteins deny that this happened. According to the witnesses called by the defense, Mr. Klopfenstein was inclined to back out of the deal, but Mrs. Klopfenstein wanted to go ahead with it. I need not resolve the dispute about whether the sellers offered to return the $50,000 deposit. The closing was completed, and the property was transferred, and so whether the sellers offered to give back the deposit or threatened to keep it is not material to the issue of ownership of the 388 acre parcel.

Terry Klopfenstein testified that he took fifteen minutes or more to carefully read the legal description of the land to be conveyed. When he read the description, he realized that it conveyed more than 653 acres, and in fact conveyed both the 653 acre and 388 acre plots. Klopfenstein testified that he pointed this

---

asserted. Rather, this testimony is relevant only to the extent it tends to prove the intent of the parties. Moreover, the Federal Rules of Evidence do not automatically bar evidence relating to statements made by someone now deceased. Missouri law specifically permits such testimony. *See* Mo. Rev. Stat. § 491.010.

out to Wes Kemp, but Kemp refused to look at the deed, and dismissed Klopfenstein's concerns, saying that the 388 acre plot was "excepted." Klopfenstein says he told the defendants the deed conveyed both properties, but the defendants refused to listen to him. I credit Terry Klopfenstein's testimony on this point: I find that the Klopfensteins were aware that the deed contained all the property, that they attempted to tell the defendants and Wes Kemp about it, and that neither of the sellers nor their agents would listen to them. Whether this was because Kemp and the sellers were annoyed by the Klopfensteins' arguments about the 13 acres or simply because they did not believe Klopfenstein had found a major error that no one else had noticed, the sellers and their agents did not investigate Klopfenstein's statement about the error.[6]

Eventually, the parties agreed to close the deal and everyone signed the necessary paperwork. After the closing was over, Terry Klopfenstein went to the Wayne County Courthouse and asked someone in the assessor's office to read the deed description. This person confirmed to Klopfenstein that the deed did in fact convey both plots of land, totaling 1041 acres.

---

[6] I credit Terry Klopfenstein's testimony on the material point that he knew of the mistake and pointed it out to the sellers, and that they refused to listen to him. This does not mean that I credit his testimony in its entirety. It is not necessary for me to decide who is telling the truth about each statement each witness says was made, and there are numerous disputes. My credibility determination on this essential point is based on the totality of the evidence.

Nothing further happened until November 2006 when the Klopfensteins received a tax bill for both plots of land. They contacted the title company, and also had conversations with the bank. Upon learning of the mistake, the bank released its lien on the 388 acres that had been mistakenly included. The Klopfensteins hired a lawyer to "work something out" with the property. The parties hotly dispute what happened next and who was reasonable and who was unreasonable. Nothing was resolved, and the Klopfensteins eventually filed this lawsuit.

## Discussion

Plaintiffs' amended complaint alleges eight counts against the P & C defendants.[7] The eight counts are: (1) declaratory judgment as to the 13 disputed acres; (2) breach of warranty; (3) violations of the Missouri Merchandising Practices Act; (4) fraud; (5) quiet title; (6) injunction against prosecution of counter-claims; (7) "indemnity as third-party beneficiary"; and (8) "fraud inducing purchase of owner's title policy." The P & C defendants assert counter-claims for reformation of the deed and lost profits. At a scheduling conference earlier in this case, the parties agreed that we would bifurcate the case and hold a non-jury trial

---

[7]Claims against an additional defendant, Farmers National Title Insurance Company, were dismissed by plaintiffs without prejudice.

on the claims for quiet title and reformation only, in the hopes that resolution of these issues might lead to resolution of the other claims.

A. <u>Defendants' claim for reformation</u>

The defendants seek to reform the deed so as to reflect the terms of the contract signed by both parties on June 9, 2006. That is, the defendants want the deed reformed so that it only transfers the 653 acre plot, as the parties' contract intended.

Reformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake. *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo. Ct. App. 1997). To support reformation for mutual mistake, the evidence must be clear, cogent and convincing and upon evidence entirely exact and satisfactory. *Allan v. Allan*, 364 S.W.2d 578, 581 (Mo. 1963); *Morris*, 941 S.W.2d at 840. The party seeking to reform a deed bears the burden of showing by clear, cogent and convincing evidence: (1) a preexisting agreement between the parties to describe the tract in accordance with the proposed reformation; (2) the mistake; and (3) the mutuality of the mistake. *Brown v. Mickelson*, 220 S.W.3d 442, 448-49 (Mo. Ct. App. 2007); *Morris*, 941 S.W.2d at 840. The mistake must be mutual and common to both parties and must reveal that both parties have done what neither intended. *Allan*, 364 S.W.3d at 581; *Mickelson*, 220 S.W.3d at 449.

Reformation cannot be ordered here because there was no mutual mistake. The Klopfensteins signed the deed knowing full well what it contained. The Klopfensteins told the sellers of the error, and the sellers refused to investigate or consider that the Klopfensteins might be right. The sellers, the real estate company, and the bank were all mistaken, but the Klopfensteins were not mistaken.

The error in the deed's legal description is plain on its face. Tract 2 of the legal description refers both to land that is part of the 653 acres west of County Road 216, as well as to land that is east of County Road 216. Anyone taking even a brief moment to read the description and compare it to the available maps of the property would realize the description encompassed both plots. Moreover, the defendants' real estate agent told the Klopfensteins early in the process that the original legal description described both the 653 acre and 388 acre parcels. The legal description produced at the closing was not new – it was the same legal description that had been used when P & C purchased the two parcels of land in 2005 from the previous owners. Defendants have failed to show by clear, cogent and convincing evidence that there was a mutual mistake justifying reformation of the deed. Defendants' claim for reformation is denied.

The evidence would have supported a claim for recision, but defendants did not ask for that remedy. Missouri courts have noted that "although traditionally

there has been reluctance to allow a unilateral mistake to avoid an agreement, this strict view has, in limited instances been softened, and a limited right of avoidance has been recognized." *Landers v. Sgouros*, 224 S.W.3d 651, 664 (Mo. Ct. App. 2007) (quoting *Matter of the Estate of Hysinger*, 785 S.W.2d 619, 624 (Mo. Ct. App. 1990)). Citing the Restatement on Contracts, Missouri courts have held that there may be relief by way of recision for a mistake where the other party knows of the mistake or it is so obvious that it should have been known. *Landers*, 224 S.W.3d at 664. Recision may be granted for a unilateral mistake when "(a) the effect of the mistake is such that enforcement would be 'unconscionable' or (b) the other party had reason to know of the mistake." Restatement (Second) Contracts § 153.

But the defendants here are not asking for recision. In fact, it was the plaintiffs who, prior to trial, sought to amend their pleadings again to include a count for recision of the entire contract. I denied plaintiffs' request, in part because defendants objected to the plaintiffs' eleventh hour attempt to amend their pleading. Defendants made clear that they are not seeking recision, and so that is not an available remedy.

B.  <u>Plaintiffs' claim for quiet title</u>

A quiet title action is appropriate in cases of ownership controversy where neither party admits the title of the other. *Morris v. Brown*, 941 S.W.2d 835, 843

(Mo. Ct. App. 1997). In Missouri, quiet title actions are governed by Mo. Rev. Stat. § 527.150, which states:

> Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property.

It is well settled that Missouri's quiet title statute is to be construed liberally. *White v. Kentling*, 134 S.W.2d 39, 44 (Mo. 1939). Under this liberal construction, "any and all rights of any litigant in and to the real estate involved may be determined in one suit." *White*, 134 S.W.2d at 44; *Autenrieth v. Bartley*, 176 S.W.2d 546, 550 (Mo. Ct. App. 1943) ("The provisions of [the quiet title] statute are as broad and far reaching as language can make it.").

In this case, only the Klopfensteins have moved to quiet title in their name, and, as set out in the factual section above, they have failed to show that their ownership of the 388 acre parcel is proper. However, in a quiet title action "the court must adjudicate the respective interests of the parties, regardless of which party is entitled to it." *Robertson v. North Inter-River Drainage District*, 842 S.W.2d 544, 547 (Mo. Ct. App. 1992) (quoting *Pitts v. Pitts*, 388 S.W.2d 337, 339 (Mo. 1965)). "Such declaration should be entered although plaintiff fails to

establish his claim of title and the defendant does not request an adjudication of title in him." *Id*. Thus, even though it is the Klopfensteins who have moved to quiet title, the Court is nevertheless empowered under the statute to quiet title in the defendants' name if equity so requires.

The Klopfensteins are the rightful owners of the 653 acres they contracted to buy and for which they have paid. Thus, title to that property will be quieted in the Klopfensteins' name. However, the evidence produced at trial demonstrates conclusively that the Klopfensteins are not the rightful owners of the additional 388 acre property. The Klopfensteins neither contracted to buy it, nor paid for it. The counter-offer accepted by the Klopfensteins specified that only the 653 acre parcel was being sold. The conveyance of the 388 acres was simply the result of a unilateral mistake at closing.

Though defendants did not ask this court for quiet title relief, I will quiet title to the 388 acre property in the name of P & C Creative Investments, LLC. Defendants have demonstrated that they possessed clear title to this property before their dealings with the Klopfensteins. Although defendants did in fact convey title to the 388 acres to the Klopfensteins at closing, defendants nevertheless remain the rightful owners of that land. Defendants never contracted to sell the 388 acre property, and were never compensated for it. It was only by virtue of defendants' own carelessness and ignorance that the property was

mistakenly conveyed.  Equity requires that what rightfully belongs to the defendants be returned to them.  For this reason, title to the 388 acre parcel will be quieted in defendants.

## Conclusion

The parties have never provided separate legal descriptions for the two parcels of land at issue in this case.  The only legal description submitted at trial is the very confusing joint description containing both parcels.  I believe it is appropriate for the parties to provide a proposed quiet title decree with an accurate legal description of the separate parcels, rather than my attempting to craft one in the first instance.  The decree they propose should quiet title in the 653 acre parcel in the Klopfensteins, and in the 388 acre parcel in P & C.  The proposed decree should provide accurate legal descriptions for the two parcels separately. Defendants will be required to provide the proposed decree, and plaintiffs will be required to file objections if they believe the form or the legal description is incorrect.

This is an equitable proceeding, and although defendants have prevailed in the sense that they are obtaining title to the disputed parcel free of claim by the Klopfensteins, they did not prevail on the counterclaim they actually brought, and their raising the counterclaim in that form unnecessarily complicated the matter. The Klopfensteins, and their counsel who originally filed this action, have not

been reasonable, because they have continued to insist, through their pleadings and otherwise, that they should be entitled to the 13 acre plot that no party to this case owns. The P & C defendants, however, caused the problem in the first place by negligently providing an incorrect legal description and then by refusing to investigate once the mistake was brought to their attention. Had they checked the legal description at closing, the error could have been corrected and this suit could have been avoided. It is my judgment therefore that neither party may recover any attorneys fees or costs incurred up to this point. Allowing either party to recover attorneys fees or costs from the other resulting from this quiet title/reformation action would not be equitable.

As stated above, there are numerous claims remaining. Counsel initially told me that if I resolved the quiet title/reformation issue, they could likely resolve the remaining claims without further litigation. I encourage them to attempt to achieve that result. If they cannot do so, of course, this litigation will continue.

Accordingly,

**IT IS HEREBY ORDERED** that no later than **February 13, 2009**, defendants shall file a proposed form of quiet title decree, quieting title in the 653 acre plot in Terry and Jill Klopfenstein, and quieting title in the 388 acre plot in P & C Creative Investments, LLC. This proposed decree must separately state the legal description for the two parcels.

**IT IS FURTHER ORDERED** that no later than **March 13, 2009** plaintiffs must file any objections to defendants' proposed form of decree, including any objections to the legal descriptions provided.

**IT IS FURTHER ORDERED** that the parties must, no later than **March 13, 2009** provide a joint proposal for a schedule for discovery, motion practice, and trial of all remaining claims, along with a statement regarding whether they believe the remaining matters are likely to be settled or whether the case should be referred to mediation. In order to provide this joint proposal, of course, counsel are required to meet and confer with one another and make good faith attempts to resolve any disputes.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of January, 2009.